1201 North Market Street
20th Floor
Wilmington, DE 19801
www.connollygallagher.com



Arthur G. Connolly, III
(302)888-6318
aconnolly@connollygallagher.com

March 5, 2020

Magistrate Judge Christopher J. Burke
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3555

Re: *Eagle Pharm., Inc. et al. v. Hospira*, C.A. No. 18-1074

Dear Judge Burke:

We write on behalf of Hospira Inc. ("Hospira"). The parties dispute the "appropriate eligibility criteria for in house counsel for the respective parties to obtain access to highly confidential information." (D.I. 61.) Hospira believes that in-house counsel should be allowed to view Highly Confidential Information pursuant to the restrictions outlined by its proposal. Plaintiffs propose that either no in-house counsel be allowed to view Highly Confidential Information, or that those who do be subject to overly restrictive and vague prohibitions on their job duties.

Hospira's proposal specifies that in-house counsel with access to Highly Confidential Information sign the undertaking and specifies that they "shall not disclose confidential information or summaries thereof to anyone involved in sales, marketing, research & development, or manufacturing (such as pricing and product design) with respect to bendamustine-containing products." (Ex. A ¶5(b)). Hospira's proposal also limits these in-house counsel to those who "will have no role in decisions on setting of the price for any bendamustine-containing product or product design for any new bendamustine-containing product." *Id*. These restrictions address the activities identified by Plaintiffs as creating a risk of inadvertent disclosure. Hospira has repeatedly invited Plaintiffs to identify other potential areas of concern so that Hospira could address them—but Plaintiffs have pointed to nothing else.

Rather than identifying specific activities, Plaintiffs insist on a bar to in-house counsel who engage in any activities falling within an unduly broad and vague definition of "competitive decision making." Specifically, Plaintiffs seek a prohibition against participation "in competitive decision making with respect to sales, marketing, research & development, or manufacturing (such as pricing and product design) with respect to bendamustine-containing products." *Id*. That prohibition is so broad and vague it could conceivably preclude in-house counsel from advising and providing instructions on issues related to secondary considerations of obviousness—already at issue in this case, or any potential preliminary injunction proceedings— not currently at issue in this case. Plaintiffs' proposed bar would also preclude in-house counsel from giving advice on third-party infringement issues having nothing whatsoever to do with any of the Plaintiffs in this case, or related to the United States at all.

Plaintiffs' overbroad blanket ban on in-house activity is not the kind of bar courts approve. Whether an in-house counsel should be barred from access to highly confidential information



Honorable Christopher J. Burke
March 5, 2020
Page 2

"must be determined … by the facts on a counsel-by-counsel basis." *In re Deutcsche Bank Trust Co.*, 605 F.3d 1373, 1378 (Fed.Cir. 2010) (*quoting U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed.Cir. 1984.))  Courts require that the party seeking the bar—here Plaintiffs— "must show good cause for its issuance." *See Deutsche Bank*, 605 F.3d at 1378 (in the context of a prosecution bar); *Blackbird Tech. LLC v. Service Lighting and Electrical Supplies, Inc.*, 2016 WL 2904592 (D.Del. 2016) (Andrews, J.) (Ex. B).  To do so, Plaintiffs must demonstrate that, in light of the Highly Confidential Information at issue, the full scope of activities prohibited by the bar and the duration of the bar "reasonably reflect the risk presented by the disclosure of proprietary competitive information." *Id*.  Plaintiffs have not met this burden.

Even had Plaintiffs demonstrated that in-house counsel's activities present some risk of inadvertent disclosure, and they have not, that "does not end the inquiry." *Deutsche Bank*, 605 F.3d at 1380.  Plaintiffs must identify the kind of information that it expects to disclose that will be relevant to the kinds of decision-making it is concerned present the risk of inadvertent disclosure.  For example, in *Deutsche Bank*, the Federal Circuit stated that while financial data may be very sensitive, it is unlikely to be relevant to patent prosecution, and therefore, in-house counsel's access to financial data would not present a risk of inadvertent disclosure in the context of patent prosecution. *Id*. at 1381.[1]

Also relevant to this inquiry are "such factors as the scope of the activities prohibited by the bar, the duration of the bar, and the definition of the subject matter covered by the bar." *Id*.  In Plaintiffs' proposal, each of these is so broad that it could leave almost nothing outside its scope.  The prohibited activities include nearly anything an in-house counsel could conceivably be involved in, the duration of the bar is infinite, and Highly Confidential Information is defined as any "highly sensitive financial or strategic information." (Ex. A at ¶1(b)).

Hospira attempted to negotiate a narrower bar with Plaintiffs.  Each time Plaintiffs raised a specific concern—pricing, product design—Hospira agreed to tailor the bar to address that concern.  However, each time Hospira did that, Plaintiffs complained Hospira's bar was not stringent enough and that the full breadth of Plaintiffs' proposed bar is necessary.  But Plaintiffs have provided no basis for its blanket restriction and it should be rejected in favor of Hospira's appropriately-tailored proposal.

Hospira's in house counsel are part of our litigation team.  They are lawyers, and are acutely aware of their ethical responsibilities and duties.  They seek a bar that protects all parties involved in this litigation, while allowing them to meaningfully participate in this Court.  They do not seek information for use for any other purpose but to advise on this litigation and regard their obligations to avoid even the perception of inadvertent disclosures as one of their most important obligations. Accordingly, Hospira requests the Court enter its proposed language.

Respectfully,

Arthur G. Connolly, III

---

[1] Here, the parties have already agreed to a prosecution bar.  *See* Ex. A, ¶6(b).