1201 North Market Street  
20th Floor  
Wilmington, DE 19801  
www.connollygallagher.com



Arthur G. Connolly, III  
(302)888-6318  
aconnolly@connollygallagher.com

March 11, 2020

Magistrate Judge Christopher J. Burke  
J. Caleb Boggs Federal Building  
844 N. King Street  
Wilmington, DE 19801-3555

    Re: *Eagle Pharm., Inc. et al. v. Hospira*, C.A. No. 18-1074

Dear Judge Burke:

We write on behalf of Hospira Inc. ("Hospira") in response to Plaintiffs' letter of March 5, 2020 regarding the parties' protective order dispute.

Plaintiffs argue that Federal Circuit authority recognizes that in-house counsel who are involved in any aspect of "competitive decision making" should be barred from seeing any documents the parties intend to designate as Highly Confidential Information. Plaintiffs also put the burden on Hospira to "explain[]…why its in-house counsel pose less of a risk of inadvertent use or disclosure than counsel seeking access in the cases" they cite. (D.I. 64 at 2.)

Plaintiffs are wrong on both points.

First, Plaintiffs are wrong that Hospira has the burden in this circumstance, especially where Hospira has accounted for each concern raised by Plaintiffs with its proposed language. (D.I. 63) According to the very case law they cite, it is Plaintiffs' burden to demonstrate the necessity for the overly burdensome restrictions they seek. *See In re Deutsche Bank Trust Co.*, 605 F.3d 1373, 1381 ("[A] party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk present by the disclosure of proprietary information.")

Second, Plaintiffs burden is not carried simply by showing that in-house counsel is involved some aspect of "competitive decision-making."  Rather, as reflected in the above quotation from *Deutsche Bank*, the assessment of risk must take into consideration the designated information as well as the scope of competitive decision making prohibited by the bar.  There must be a balance.  For example, in *Deutsche Bank*, the Federal Circuit considered patent prosecution as a type of competitive decision-making and financial data as a type of highly sensitive information that might be disclosed.  The court stated that while financial data may be very sensitive, it is unlikely to be relevant to patent prosecution, and therefore, in-house counsel's access to financial data would not present a risk of inadvertent disclosure in the context of patent prosecution. *Id*. at 1381.[1]  Thus, every involvement in competitive decision-making does not necessarily present a

---

[1] Again, the parties have already agreed that in-house counsel who see the designated information will not prosecute patents pursuant to the bar.



Honorable Christopher J. Burke
March 11, 2020
Page 2

risk of inadvertent disclosure.  It depends on both the type of sensitive information to be disclosed as well as the type of competitive decision-making activities engaged in by in-house counsel.

Here, Hospira has pointed to the example of in-house counsel giving advice on whether Hospira's product infringed a patent owned by an unrelated third-party, having no involvement in this case.  Hospira understood this activity would be precluded by Plaintiffs' overly-broad competitive decision-making bar.  During the meet and confer process, Plaintiffs explained that this kind of activity is indeed prohibited by the Federal Circuit's definition of "competitive decision-making" as articulated by *Deutsche Bank*, but failed to explain how there was a risk of inadvertent disclosure of any of Plaintiffs' confidential information in this scenario.  It simply is not the case that *Deutsche Bank* promulgates the rigid standard Plaintiffs state—especially because the case itself gives examples that are inconsistent with that standard.

Furthermore, an in-house counsel's agreement to abstain from activities that might present an unacceptable risk, even while continuing to engage in other actions that fall within Plaintiffs' definition of competitive decision-making, have been found to address all reasonable concerns regarding the risk of inadvertent disclosure.  *British Telecomm. PLC v. IAC/InterActiveCorp.*, 330 F.R.D. 387, 394 (D.Del. 2019).  In *British Telecom*, plaintiff's in-house counsel was involved in "evaluating the legal risks associated with U.S. litigation against target companies." 330 F.R.D. at 390.  He agreed not to view defendant's source code and not to be involved in considerations of any additional patent claims against the defendants in the same case.  He did not agree to refrain from all competitive decision-making—including, "evaluating the legal risks associated with U.S. litigation against target companies" where the target was not defendants.  Under Plaintiffs' rationale, because he continued to be involved in even some competitive decision-making, the Court should have barred him from seeing all sensitive information at issue—but that did not happen.  The Court held that in light of the documents he would be seeing (no source code) and the tailored bar language, that the risk of inadvertent disclosure was low and he would be allowed to see non-source code confidential information.

Here, Hospira has addressed and conceded to every specific area of competitive decision making that Plaintiffs have identified that arguably poses a risk of inadvertent disclosure—pricing and product design.  Plaintiffs have not identified any type of information that is so highly sensitive that there would be a risk of inadvertent disclosure in any other context.  Accordingly, Hospira's proposed bar, like the one in *British Telecom*, should be accepted.

Respectfully,


Arthur G. Connolly, III