1201 North Market Street
20th Floor
Wilmington, DE 19801
www.connollygallagher.com



Arthur G. Connolly, III
(302) 888-6318
aconnolly@connollygallagher.com

March 24, 2020

**VIA CM/ECF**

The Honorable Christopher J. Burke, Magistrate Judge
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3555

    Re: *Eagle Pharm., Inc. et al. v. Hospira*, C.A. No. 18-1074-CFC

Dear Judge Burke:

Thank you for the opportunity to discuss Hospira Inc.'s ("Hospira") concerns about the scope of the Proposed Protective Order with you last week. (D.I. 68.) In response to the Court's guidance, we submit declarations of the two in-house counsel Hospira would designate to have access to Highly Confidential Information under Hospira's version of the Proposed Protective Order: Leah Taylor and Anne Christopher. The declarations describe their roles in detail and their concerns should the Court adopt Plaintiffs' proposed language. The declarations also memorialize the discussion of roles we explained during last week's hearing on behalf of Hospira.

The Court asked Plaintiffs to describe the scenarios it is concerned about with regard to inadvertent disclosure. (*See* Tr. 5:11-6:22.) Hospira addressed many of these concerns in its initial draft proposal. To further tailor our proposal to allay Plaintiffs' concerns, we provide additional edits to Hospira's proposal below. Hospira believes these additional restrictions are enough and should be adopted.

> **Defendant's proposal**: in-house counsel who are involved in this litigation. The approved in-house counsel, for the avoidance of doubt, will be entitled to view information about all issues litigated, such as secondary considerations of non-obviousness, but will not disclose any confidential information to anyone not approved pursuant to the Protective Order. Approved in-house counsel may report on the litigation to his/her business associates, but may not disclose confidential information in any detail. For the avoidance of doubt <u>and consistent with the above</u>, the approved in-house counsel shall not disclose confidential information or summaries thereof to anyone involved in sales, marketing, research & development, or manufacturing (such as pricing and product design) with respect to bendamustine-containing products. ~~Further~~<u>For the further avoidance of doubt</u>, approved in-house counsel will have no role in decisions on setting the price<u>, or which potential customers to target,</u> for any bendamustine-containing product<u>,</u> or product design for any new bendamustine-containing product. <u>These</u>

> restrictions shall remain in effect for the same duration as the restrictions limiting patent prosecution in Paragraph 6(b) of this Protective Order.

In an effort to address Plaintiffs' concern about manufacturing information, Hospira previously offered to limit in-house access to Plaintiffs' NDAs. Hospira would agree to keep any manufacturing information contained in the NDAs for outside counsel only. We do not believe this is necessary given the other restrictions already proposed (including related to manufacturing), but make this offer in an attempt to come to an agreement.[1]

Further, Plaintiffs' proposal is broader than the case law supports. Federal Circuit precedent does not mandate the stringent and unbending language Plaintiffs propose in this case. Instead, the focus is on balance between the risk of inadvertent disclosure and harm to the client if in-house counsel cannot have access. (*See* Tr. at 8:13-16 (agreeing balancing is appropriate).) The focus is not solely on whether there would be any hypothetical harm if there was a hypothetical inadvertent disclosure in the future, no matter how remote (which is the only argument Plaintiffs have made).

This case provides even more reason to allow in-house counsel to review Highly Confidential information than other cases—because of Orphan Drug Exclusivity, notwithstanding the fact that Hospira's NDA has already received Tentative Approval from the FDA, Hospira cannot receive Final Approval to market its product until December 2022[2]—when Plaintiffs' Orphan Drug Exclusivity expires. That means that any commercially sensitive information produced now will be at least two years stale by the time Hospira might be able to hypothetically compete with Plaintiffs.

Ms. Taylor and Ms. Christopher have been involved with work on bendamustine in their legal capacities since 2010. (Christopher Decl. at ¶ 8; Taylor Decl. at ¶ 8.) They are legal advisors to the business and part of the litigation team. Plaintiffs have already stated that "to the extent that its simply in house counsel commenting on the merits of the litigation the way often advice is given, it doesn't sound like that would implicate competitive decision-making...." (Tr. at 8:5-8.) We agree. Ms. Taylor and Ms. Christopher have acted pursuant to Protective Orders for years and take their roles as officers of the court seriously. They desire clarity in the Protective Order language that protects all parties and allows for understanding as to what roles they can and cannot have in the future. Hospira's proposed language provides that clarity and we respectfully request that the Court adopt it.

> Respectfully submitted,
>
> */s/ Arthur G. Connolly, III*
>
> Arthur G. Connolly, III (#2667)

---

[1] Hospira offered to keep the entirety of Plaintiffs' NDA on an outside counsel only basis last week, but has since learned that Plaintiffs are relying on certain information cited in its NDA in their infringement contentions. Hospira's in-house counsel needs to see evidence cited in Plaintiffs' contentions regarding Hospira's alleged infringement.

[2] This case is scheduled for trial in November 2021, a full year before FDA could grant Hospira Final Approval. (D.I. 44 at 16.)